ELLEN CONETON *vs.* OLD COLONY STREET RAILWAY COMPANY.

Norfolk.      March 25, 1912. — May 23, 1912.

Present: RUGG, C. J., MORTON, BRALEY, SHELDON, & DeCOURCY, JJ.

*Negligence,* Street railway.      *Evidence,* Materiality.

At the trial of an action for personal injuries against a street railway company by one who was thrown down by the starting of a car as he was attempting to alight, there was evidence tending to show that the defendant at the place of the accident maintained a single track with a turnout and a signal box, that it was the duty of the motorman to stop the car on the turnout and of the conductor to leave the car and change the signal, that there was no white post or other indication that it was a regular stopping place for cars, but that passengers had alighted from and entered cars at that point; that when the car stopped on the occasion in question the conductor left it to change the signal and the plaintiff was attempting to alight when, before the conductor returned, the motorman started the car and the plaintiff was thrown down. There was no evidence that either the motorman or the conductor knew that the plaintiff was attempting or desired to alight. *Held,* that there was no evidence of negligence on the part of either the conductor or the motorman.

The mere fact that passengers are accustomed to alight from a steet car at a point near a town line, which is a fare limit, where there is not a regular stopping place for the cars for the reception and discharge of passengers, but where there is a switch and it is the duty of the conductor to leave the car to change a signal, does not impose upon the motorman the duty, before he starts the car in the absence of the conductor, of seeing that no passenger is attempting to alight.

At the trial of an action against a street railway company for personal injuries where it appeared that the plaintiff was thrown down by the starting of a car as he was attempting to leave it, that neither the conductor nor the motorman was informed or knew of the plaintiff's intention, that the conductor in the performance of his duties was absent from the car changing a signal, and that the car had stopped at a turnout near a town line which was a fare limit where passengers got on and off cars but where there was no white post or anything else to indicate a regular stopping place, evidence tending to show that at that point conductors were in the habit of calling out and announcing the limit of the car fare properly was excluded as immaterial, there having been no evidence that such an announcement was made on the occasion in question.

MORTON, J.   This is an action of tort to recover for injuries sustained by the plaintiff while alighting from one of the defendant's cars at or near the division line between Quincy and Braintree. At the close of the plaintiff's evidence the presiding judge[*]

---

[*] *Wait,* J.

directed a verdict for the defendant. The case comes here on the plaintiff's exceptions to the ruling thus made, and to the exclusion of certain evidence.

The accident happened on August 19, 1904, between 8 and 8.30 in the evening. The place where the plaintiff attempted to alight was on a switch or turnout near a signal box. It was the duty of the conductor to throw the signal, and the car came to a stop on the turnout to enable him to do so, and he left the car for that purpose. While the car was stopped and the conductor was at the signal box the plaintiff attempted to alight. She gave no notice to the conductor or the motorman that she wanted to get off the car at that place, and there was no evidence that either one knew or had reason to know of her intention or desire to alight. As she was getting off the motorman started up the car and she was thrown to the ground, receiving the injuries complained of. The line between Quincy and Braintree was a fare limit. The turnout was near the line and there was evidence that passengers got on and off the cars at that point. There was no white post there to indicate, if that is material, that it was a regular stopping place. The plaintiff offered to show that conductors had been in the habit of calling out and announcing the limit of the car fare, and that people had been accustomed to leave the car at the place where it stopped when the accident occurred. The judge excluded the evidence thus offered and the plaintiff duly excepted. There was no evidence tending to show that any such announcement had been made at the time of the accident. But as has been already stated, it appeared from other testimony in the case that passengers got on and off the car at the place where the accident occurred, and no harm was, therefore, done by the exclusion of the evidence that people were accustomed to leave the car at that place.

It is plain, we think, that there was no evidence of negligence on the part of the conductor. He did not know and had no reason to know that the plaintiff desired to get off the car, and if he did he gave no signal to start the car and did not in any way cause it to be started or contribute to the accident. Neither do we think that there was any evidence of negligence on the part of the motorman. He likewise did not know and had no reason to know when he started the car that the plaintiff was attempting to alight,

or that she wished to alight. Although, as the plaintiff testified, the place was a stopping place, it was a stopping place of such a nature that those in charge of the car cannot be held to be to blame for starting the car while a passenger was alighting, in the absence of any signal from the passenger that he or she wished to alight or of any knowledge or reason to know that the passenger was attempting to alight or wished to alight. The mere fact that passengers were accustomed to alight at that place did not of itself without anything more impose upon the motorman the duty of seeing that none were attempting to alight when he started the car. He might well assume in the absence of notice to the contrary that no passenger was attempting to alight. *Spaulding v. Quincy & Boston Street Railway,* 184 Mass. 470. *Oddy v. West End Street Railway,* 178 Mass. 341. If neither the conductor nor the motorman was negligent in starting the car, the fact, if it was a fact, that it started with a "lurch" or "gave a lurch," as the plaintiff testified, would not help the plaintiff. The manner in which the car started could be material only in case the circumstances were such as to show that the conductor or motorman knew or had reason to know that she was attempting to alight or desired to alight and owed a duty to her not to injure her by an improper starting of the car.

Evidence that it was the custom or habit of conductors to announce or call the limit of the car fare was immaterial. There was, as already observed, no evidence of any such announcement or call on the evening in question, and it appeared independently of such evidence that passengers got on and off at the place where the car had stopped when the accident occurred.

*Exceptions overruled.*

*J. W. McAnarney,* (*T. F. McAnarney* with him,) for the plaintiff.
*Asa P. French,* (*J. S. Allen, Jr.,* with him,) for the defendant.