EUGENIA CHAMPAGNE *vs.* BOSTON ELEVATED RAILWAY
COMPANY.

Middlesex.    January 22, 1914. — March 31, 1914.

Present: RUGG, C. J., LORING, SHELDON, DE COURCY, & CROSBY, JJ.

*Carrier,* Of passengers.  *Negligence,* Street railway.

In an action by a woman against a corporation operating a street railway for personal injuries sustained by her when a passenger on an open car of the defendant by reason of the alleged negligent starting of the car as she was in the act of alighting from it, instructions, given to the jury by the presiding judge at the request of the plaintiff, that "the defendant owes a high degree of care to allow its passengers to properly and safely alight from its cars" and that "the defendant owed a higher degree of care to the plaintiff, its passenger, than it did to a pedestrian or a person on the highway," afterwards amplified properly in the charge, are expressed in language that long has been used with approval and are reasonably accurate; and especially these expressions afford no ground for sustaining an exception where the judge has given the jury plain instructions as to the rights of the plaintiff upon the principal issue of fact.

In an action by a woman against a corporation operating a street railway for personal injuries sustained by her when a passenger on an open car of the defendant by reason of the alleged negligent starting of the car as she was in the act of alighting from it, there was evidence that the accident occurred at about ten o'clock in the evening, that the conductor called out, "Transfer for Huron Avenue," which was the plaintiff's destination, that the car came to a full stop near the transfer station before reaching the waiting room but within six feet of it, that the plaintiff started to alight, and that, when she had one foot on the running board and the other on the street, the motorman started the car and she was thrown down and injured, that no starting bell was rung, and that, after the plaintiff fell, the car again came to a stop about a car length and a half ahead of her. *Held,* that the jury could find that the conductor was negligent in not warning the plaintiff that the car had not reached the transfer station and in failing to observe that passengers were alighting when the car first stopped, and that the motorman also was negligent in starting the car without waiting for a signal.

In an action by a woman against a corporation operating a street railway for personal injuries sustained by her when a passenger on an open car of the defendant by reason of the alleged negligent starting of the car as she was in the act of alighting from it, the presiding judge instructed the jury, that "the fact, that a car starts, in itself, having come to a stop, at a time when it is dangerous for the passengers, . . . is evidence of negligence on the part of some one connected with the car, and you are not obliged to determine which one was guilty of that negligence, if there was negligence, whether it was the conductor or the motorman."  There was evidence of negligence of the motorman in

starting the car without a signal and of negligence of the conductor in failing
to warn the passengers that they were not yet to alight. *Held,* that the
portion of the charge quoted, in connection with the rest of the charge, was
not open to objection.

TORT for personal injuries alleged to have been sustained by
the plaintiff on May 21, 1911, when she was a passenger on a street
railway car of the defendant, by reason of the alleged negligence
of the defendant's servants in starting the car when the plain-
tiff was in the act of alighting from it at or near the defendant's
car barns on Mount Auburn Street in Cambridge. Writ dated
July 15, 1912.

In the Superior Court the case was tried before *Bell,* J. The
evidence is described in the opinion. The defendant asked the
judge to make certain rulings, of which the first and second were
as follows:

"1. There is no evidence of negligence on the part of the
motorman.

"2. There is no evidence of negligence on the part of the
conductor."

The judge refused to make these rulings, and also refused to
make the fifth ruling requested by the defendant, but the excep-
tion to the refusal of this ruling was waived by the defendant at
the argument.

The judge gave to the jury the following instructions requested
by the plaintiff, subject to exceptions by the defendant:

"2. The defendant owes a high degree of care to allow its pas-
sengers to properly and safely alight from its cars.

"3. The defendant owed a higher degree of care to the plain-
tiff, its passenger, than it did to a pedestrian or a person on the
highway."

The defendant also excepted to the following portion of the
judge's charge:

"The evidence would not show in this case specifically whose
negligence it was, if you find negligence, — whether it was negli-
gence of the conductor or of the motorman; but the fact, that a
car starts, in itself, having come to a stop, at a time when it is
dangerous for the passengers, our Supreme Court have said is
evidence of negligence on the part of some one connected with
the car, — and you are not obliged to determine which one was

guilty of that negligence, if there was negligence, whether it was the conductor or the motorman."

The jury returned a verdict for the plaintiff in the sum of $450; and the defendant alleged exceptions.

*F. J. Carney,* for the defendant.

*T. F. Murphy,* for the plaintiff, submitted a brief.

DE COURCY, J.   On the plaintiff's testimony the jury could find that the facts as to the accident were as follows: At about ten o'clock in the evening of May 21, 1911, the plaintiff with her two children boarded an open car of the defendant on Mount Auburn Street in Watertown.   The car was bound for Hanover Street in Boston; and, as there were no unoccupied seats, they stood with others on the rear platform.   Before reaching Mount Auburn bridge the plaintiff secured transfers for Huron Avenue. As the car was coming to a stop near the Mount Auburn transfer station, the conductor, who was on the running board near the front end, called out, "Transfer for .Huron Avenue.   This car is going to Hanover Street only."   The car came to a full stop at or near the transfer station, and the plaintiff started to alight. While she had one foot on the running board and the other on the street, in the act of alighting, the motorman started the car and she was thrown down and injured.   No witness testified that a starting bell was rung.   In cross-examination the plaintiff testified that the car first stopped before reaching the waiting room, but within six feet of it; and that after she fell it came to a stop again, about a car length and a half ahead of her.   Although there was evidence on behalf of the defendant that the plaintiff was injured by alighting from the car while it was moving, we must accept her version in view of the verdict.

1. There was no error in giving the plaintiff's second and third requests.   It is difficult to formulate the general duty of a carrier in a single sentence that is not liable to verbal criticism, even if the single standard of ordinary care under the circumstances be adopted as a rule of universal application.   The requests, as amplified in the charge, were reasonably accurate and adopted the phraseology that long has been used with approval.   *Donahoe* v. *Boston Elevated Railway,* 214 Mass. 70.   *Rubinovitch* v. *Boston Elevated Railway,* 192 Mass. 119.   But the presiding judge did not confine his charge to the .statement of general principles.   The

real controversy was one of fact, and the issue a narrow one. The plaintiff contended that the car came to a stop twice, the first time at the place where she was injured, and the second and final one at the waiting room. The defendant's contention, supported by its witnesses, was that the car stopped only once, and that the plaintiff was injured by attempting to alight while the car was yet in motion. The judge directed the attention of the jury to this controlling issue, and applied the law thereto in a way that was practical, pointed and accurate. He said: "If she left the car while it was in motion, and not when it was stopped, then she cannot recover." This was more helpful to the jury than abstract propositions of law, however accurate.

2. The defendant has waived its fifth request. It was not entitled to either the first or second rulings requested. The jury could find that the conductor should have anticipated that passengers probably would alight at the first stop after he announced that they must change cars, and that the darkness would prevent them from realizing that the car had not quite reached the regular stopping place, especially if they were at the rear end of the car. Under such circumstances the jury could say that the conductor was negligent in not warning the plaintiff that the car had not yet reached the station, and in failing to observe that passengers were alighting when the car first stopped. And on the plaintiff's version of the accident the motorman also might be found negligent in starting the car without waiting for a signal.

3. The portion of the charge excepted to, especially when read in connection with what goes before and what follows, is not open to objection. *Killam* v. *Wellesley & Boston Street Railway,* 214 Mass. 283.

*Exceptions overruled.*