IVERS P. LAWRENCE *vs.* FITCHBURG AND LEOMINSTER STREET RAILWAY COMPANY.

MARTHA H. LAWRENCE *vs.* SAME.

Worcester. February 24, 1909. — March 29, 1909.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Negligence,* Street railway, In use of highway, Automobile, Wanton negligence of defendant.

At the trial of an action against a street railway company for damage alleged to have been caused to an automobile of the plaintiff by an electric car of the defendant running into it on account of the negligence of the motorman of the car, it appeared that at the time of the collision the automobile was stalled on the street railway track which was at the side of, and outside the travelled part of, the highway, that the collision occurred on a dark night; and there was evidence tending to show that both the rear and the front lights of the automobile were lighted, that the motorman of the electric car could have seen the automobile while still five hundred feet distant from it, that the car was being run from twenty-five to thirty miles an hour and that its speed was not noticeably lessened until the time of the collision. *Held,* that it could not be said as matter of law that the motorman was not negligent, since the jury were warranted in finding that he either saw or in the exercise of proper diligence ought to have seen the automobile when he was far enough from it to have avoided the collision. *Held, also,* that there was no evidence of such wanton negligence on the part of the motorman as would enable the plaintiff to recover for personal injuries sustained in the collision to which his own negligence contributed.

At the trial of an action against a street railway company for personal injuries received by the plaintiff, a woman, and alleged to have been caused by an automobile, in which the plaintiff was, being negligently run into on a dark night by an electric car of the defendant, it appeared that the automobile was the property of the plaintiff's husband, that it had become stalled upon the street railway track without fault of the plaintiff or of her husband and that just before the collision the husband was "cranking" it and trying to cause it to run while the plaintiff remained seated in it, and that both the front and rear lights of the automobile were lighted; that, when the car was seven hundred feet distant, the plaintiff saw the car coming and that it was being run at a negligently high rate of speed and called her husband's attention to those facts, but continued in her seat until the car was about a hundred feet away, when she stood up and waved her hand to the motorman but did not leave the automobile. The plaintiff in her testimony assigned as her sole reason for not leav-

ing the automobile her expectation that the car would stop. *Held,* that the plaintiff could not recover, since as a matter of law she was not in the exercise of due care, it being impossible to avoid the conclusion that she chose to put all the responsibility for her personal safety upon the defendant's motorman, which under the circumstances she was not warranted in doing.

TWO ACTIONS OF TORT, the first containing counts for injury to the plaintiff's automobile and personal injuries to the plaintiff and for consequential damages due to personal injuries to the plaintiff's wife, who was the plaintiff in the second case, it being alleged in three counts that the defendant negligently caused an electric car to run against the plaintiff's automobile, and in three other counts that the defendant through its servants and agents " most wilfully drove " the car against the automobile. The second case was merely for personal injuries to the wife. Writs dated August 12, 1907.

The cases were tried together before *Sanderson,* J. The facts are stated in the opinion. At the close of the evidence, the defendant requested the following rulings, which the presiding judge refused to give :

" 2. If the plaintiffs saw the car approaching at a distance of five hundred feet or more, upon a dark night, and knew they were in a position where the car could not pass without colliding with the automobile, and had ample time to remove from such position of danger, but remained in the same position, relying upon the expectation that the motorman would see them and stop the car before colliding with the automobile, then neither plaintiff can recover for personal injuries, nor for any damages connected with, or growing out of, such personal injuries.

" 3. Upon all the evidence the plaintiffs were not in the exercise of due care.

" 4. Upon all the evidence the plaintiff Martha H. Lawrence cannot recover.

" 5. Upon all the evidence the plaintiff Ivers P. Lawrence cannot recover for anything except the damages to the automobile.

" 6. Upon all the evidence the plaintiff Ivers P. Lawrence cannot recover."

After the charge, the defendant made a request for an additional ruling which was like the second already asked for, except that the words " unless the plaintiffs have proved wil-

ful negligence on the part of the defendant" were added at the end. This ruling the judge also refused to give.

The jury found for the plaintiff in the second case, and in the first case found for the plaintiff on the count for consequential damages caused by the injuries to the wife, and on the count for damage to the automobile found for the plaintiff in the sum of $250. The defendant alleged exceptions

The cases were submitted on briefs.

*C. F. Baker & E. W. Baker,* for the defendant.

*J. F. McGrath,* for the plaintiffs.

SHELDON, J. The jury might have found upon the evidence that the automobile in which the plaintiffs were riding became stalled in close proximity to the defendant's track, that this was without any negligence on the part of either plaintiff, and that although the male plaintiff, hereinafter called the plaintiff, endeavored to start his automobile and get it away from its position of danger, and did everything in this behalf which was required by due care, he was unable to do so, and it was run into by the defendant's car and damaged. If a finding that this collision was due to negligence of the defendant's servants was warranted, then it is evident that the plaintiff could recover for the damage thus caused to his automobile; and this presents the first question to be answered.

It was a dark night; whether it was foggy or not was in dispute. The defendant's track was on the easterly side of the road, outside of the travelled part of the highway. The space between the rails was not macadamized, but was grass-grown and rough. East of the tracks, the ground was rough and there were piles of ties and rails. The plaintiff testified that he saw the defendant's car approaching his stalled automobile when it was as much as five hundred feet away, and the jury, in spite of the contradictory testimony, might find that the defendant's motorman could see the automobile from as great a distance. There was evidence, although this was disputed, that the rear light on the plaintiff's automobile was burning and that the front lights shone back a long distance from the car. The plaintiff testified that the car came on very rapidly. Different witnesses put its speed at from twenty-five to thirty miles an hour. Mrs. Lawrence testified that its speed was not notice-

ably reduced until the time of the collision, although she heard the brakes put on when she stood up and waved her hand to the motorman. This evidence was contradicted; but it was for the jury to say what testimony was to be believed.

Upon these facts it cannot be said as matter of law that the conduct of the defendant's servant was free from negligence. It is true that the defendant was not bound to anticipate that any one would be driving upon the track outside of the travelled part of the road; but the jury might find that in the exigencies of travel, the duty of turning out for other vehicles might at any time bring and keep for some time a carriage or automobile dangerously near to the track. The liability of such a machine as the plaintiff's to become stalled might be found to be a matter of common knowledge. But the decisive consideration on this part of the case is that the jury might find that the motorman either did see, or, in the exercise of proper diligence ought to have seen the plaintiff's machine at a distance of some hundreds of feet, and that he ought very soon to have noticed that it was stationary and might well be stalled, and that due care required him thereupon to reduce his speed to such a rate that when he saw the full emergency, when he saw or ought to have seen Mrs. Lawrence standing up in her seat and signalling to him, he might have stopped his car and avoided any collision. This warranted a finding that the collision was due to his negligence; and it follows that the plaintiff was at least entitled to recover for the damage to his automobile, and that the third and sixth instructions requested could not have been given.

But somewhat different questions are raised upon the other requests for instructions.

The plaintiff and his wife both realized fully their dangerous position. They knew that cars passed the place about once in fifteen minutes. They had overtaken and passed this very car about one mile back from the place of the accident. After their machine was stalled and while the plaintiff was endeavoring to crank it and get it into motion, they saw the headlight of this car, at a distance which the plaintiff at first said in his testimony " might have been one thousand feet," later putting it at " fully seven hundred feet," and afterwards at " about five hundred feet away when I first saw it." Mrs. Lawrence however

made no effort to get out of the car, and merely, when the car was about one hundred feet away, stood up and signalled with her hand to the motorman. The only effort which the plaintiff made to get himself or his wife out of their perilous position was that, in his own words, he "did the best [he] could to crank the car, and used [his] best effort to start it." It is true that the machinery of the automobile would have been in the way of Mrs. Lawrence's getting out of it on the right hand side, which was that away from the car; and the plaintiff testified that it would have been unsafe for her to step in front of the approaching car, even when it was five hundred feet away, coming at the rate that it was. He said in direct examination that the reason why he did not get out of the way was because he thought the car would stop. In cross-examination he said that it never occurred to him to get out of the way.

Mrs. Lawrence testified that she "heard the wires in the distance jingling," looked back and saw the electric car "just coming round the corner." This was at a distance of seven hundred feet from where the automobile was stalled. She called her husband's attention to it and he looked around at it. She continued in her seat until, when the car was about a hundred feet away, she signalled to it as already stated. She testified that when she first saw the electric car coming around the corner she would have had plenty of time to get out, and that the reason she did not do so was because she thought the motorman would see the automobile and stop.

It is true, as has been argued by the counsel for the plaintiff, that a plaintiff is not to be charged with negligence because of a mere error of judgment, especially when the circumstances are such as to call for speedy decision and action. *Kerr* v. *Boston Elevated Railway,* 188 Mass. 434. *Creavin* v. *Newton Street Railway,* 176 Mass. 529. *Le Blanc* v. *Lowell, Lawrence & Haverhill Street Railway,* 170 Mass. 564. Nor is the testimony of the husband, that it would have been dangerous for Mrs. Lawrence to leave the automobile when she first saw the car to be disregarded. But this, as we have already said, was not her view; for she assigned as the sole reason of her inaction her expectation that the car would stop. And the plaintiff's continued effort to crank up his automobile was not due to any

mistaken idea that he could thus get away with his wife and his machine before the car should strike them. He also trusted their safety to his hope that the motorman would look out for them and seasonably stop his car. If this was not their expectation, manifestly it would be much less dangerous for them to attempt to get out of the way than to wait and be run into. It was then obvious that the course which they both adopted, of trusting their safety solely to their expectation that the motorman would see them and would understand that their machine was stalled close to the tracks and could not be moved, while they preferred to stay in and by their vehicle and trust to him to save them from the risk that they were running with their eyes open, was not only more dangerous than for them to put their persons in a place of safety, but was the most dangerous course that they could have chosen. Even in an emergency, one must yet exercise reasonable care under the circumstances. *Tozier* v. *Haverhill & Amesbury Street Railway*, 187 Mass. 179. It is impossible to avoid the conclusion that both of these plaintiffs chose to put all the responsibility for their personal safety upon the defendant's motorman. Upon their own testimony they made no attempt either to put themselves in safety or to give any warning to the motorman, either by signal or outcry or by running back, until it was too late to avoid the collision. It did not occur to them to act otherwise. They failed to take not only due care, but any care. As in *Vizacchero* v. *Rhode Island Co.* 26 R. I. 392, they preferred to rely wholly on the motorman.

Accordingly, the second, fourth and fifth requests should have been given.

There was no evidence of such wanton and reckless negligence on the part of the defendant's servants as would enable the plaintiffs to recover for their personal injuries in spite of their own negligence, under the rule of *Banks* v. *Braman,* 188 Mass. 367. See the modification of the headnotes in this case in 192 Mass. 162.

In the case of Martha H. Lawrence the exceptions must be sustained. In that of Ivers P. Lawrence the same order must be made, unless he shall elect to take judgment for $250 only for the damage to his automobile, on the second count of his declaration, in which case the exceptions in his case will be overruled.

*So ordered.*